**In re PORTION CONTROL MEAT PROCESSING CO., INC., Debtor.**

**Commerce Bank & Trust Company, Appellant,**

**v.**

**Connecticut Container Corp., et al., Appellees.**

**Bankruptcy Appeal No. 82–9007.**

United States Bankruptcy Appellate Panel for the First Circuit.

Dec. 15, 1982.

Morris A. Greenbaum, Guterman, Horvitz, Rubin & Rudman, Boston, Mass., for appellant.

David A. Talman, and Sumner Silver, Talamo, Phillips, Silver & Talman, P.C., Worcester, Mass., for appellees.

Mark N. Berman, Widett, Slater & Goldman, P.C., Boston, Mass., for trustee.

Before VOTOLATO, Chief Judge, JOHNSON and GOODMAN, Bankruptcy Judges.

VOTOLATO, Chief Judge.

The issue presented on this appeal is whether the Bankruptcy Judge erred in or-

---

dering Commerce Bank & Trust Co., a secured lender of the Chapter 11 Debtor, to pay two post-petition suppliers pursuant to the terms of a financing agreement previously entered into between the Commerce Bank and the Debtor.

The relevant facts are as follows: On September 9, 1980 Portion Control Meat Processing, Inc., together with five affiliates, filed a Chapter 11 petition with the United States Bankruptcy Court for the District of Massachusetts. Three days later the Bankruptcy Judge entered an order approving an agreement between the Debtor and Commerce Bank and Trust Co., which provided for post-petition financing of the Debtor's operation. Under that agreement, the Debtor was to turn over to the Bank its daily collections of post-petition receivables and the Bank would lend up to 75 percent of the funds back to the Debtor for normal expenditures. The Bank retained the right to discontinue this financing at any time, and its exercise of that right is what brings the matter before us.

In October 1980, two suppliers of the Debtor, Connecticut Container Corp. and Massachusetts Container Corp., delivered (on credit) to the Debtor goods with a value of $5,579. Later that month, but prior to payment of the $5,579 in question, the Bank exercised its option to discontinue the financing agreement. When the Container Corporations attempted to collect from the Debtor for the October deliveries, they were advised by the Debtor to call the Bank. Calls to the Bank each month through February resulted in Bank assurances that payment would be made.[1]

The Bankruptcy Court issued another order on March 30, 1981 approving a stipulation entered into by the Debtor, the Bank, and the Official Creditors' Committee. Although that stipulation deals with retroactive restructuring of the earlier financing arrangement, its real focus was on the distribution of the Debtor's assets after liquidation. The proceeds of the liquidation were first to pay post-filing debt, second to reimburse the Bank for any diminution in the value of its collateral, and finally, to return any surplus to the Debtor.

On April 6, 1981, both Container Corporations filed a "Request for Payment of Administrative Expense" for the October deliveries to be paid as an administrative expense. On November 10, 1981, the Bankruptcy Court ordered the Bank to pay these claims from proceeds received from post-petition accounts receivable. It is the Bank's appeal from that order which is before us.

The parties agree that the amounts requested by the Appellees are valid administrative expenses. At issue is whether the October termination or the March 30, 1981 order operated retroactively to relieve the Bank from liability for expenses incurred by the Debtor before the Bank terminated the September financing agreement. We affirm the ruling of the Bankruptcy Court and hold that the Bank could not retroactively disclaim liability for the expenses in question.

The September 12, 1980 order is controlling in this situation. It was in effect at the time the Appellees delivered supplies to the Debtor, (unquestionably, in reliance thereon),[2] and the Bank's subsequent decision to discontinue financing, but before the invoices were paid, cannot operate retroactively as to the Bank's liability under the September 1980 order.

In his November 10, 1981 order the Bankruptcy Judge stated:

I think the proper view, is that, by the stipulation entered into between the Bank and the debtor of September 12, 1980 and approved by this Court, the Bank agreed to finance the debtor's operations until such time as it chose not to,

1. On June 15, 1981, Edward Tracktenberg, a sales representative for Massachusetts Container, filed an affidavit with the Bankruptcy Court containing these facts. No counter-affidavits were filed and these facts are taken as undisputed.

2. The record indicates that an officer of the Debtor briefly described the financing arrangement to the Appellees by letter dated October 1, 1980. See Appellee's Document No. 1—Record on Appeal.

but that all expenses incurred until that point which remained unpaid would be reimbursed by a loan from the Bank to the debtor.

We agree with the Bankruptcy Judge's understanding of the relationship of the parties, and we reject the Bank's contention that by terminating the first agreement it was able to avoid liability for debts incurred while that agreement was in effect. *See generally* 6 *Corbin on Contracts* § 1266 (1951) (exercise of termination clause operates prospectively only). We know of no authority or equitable ground upon which the Bank should be allowed to retroactively and unilaterally avoid liability to the Appellees who shipped goods to the Debtor in reliance on an outstanding and unambiguous court order.

The Bank's argument that the stipulation approved on March 30, 1981 terminated their liability is also rejected. The stipulation did purport to abrogate the September 12, 1980 order by providing that "[t]he September 12, 1980 Findings of Fact and Order are null and void and of no further force and effect except as expressly provided hereinafter." This disclaimer fails in its attempt to nullify the agreement and order in effect when the Appellees delivered the supplies in question, for the same reasons stated above.

Additionally, although the Debtor assented to the March 30, 1981 stipulation, the Appellees did not, and their right to payment under the September agreement was not altered by the March 1981 order approving the stipulation.

The order of the Bankruptcy Court is affirmed.